UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOHN HOLLINS, | ) | |
|     Petitioner, | ) | |
| v. | ) | Case No. 2:14-cv-394-JMS-DKL |
| | ) | |
| DICK BROWN, | ) | |
|     Respondent. | ) | |

**Entry Discussing Petition for Writ of Habeas
Corpus and Denying Certificate of Appealability**

For the reasons explained in this Entry, the petition of John Hollins for a writ of habeas corpus must be **denied** and the action will be dismissed with prejudice. In addition, the court finds that a certificate of appealability should not issue.

**The Petition for Writ of Habeas Corpus**

**I. Nature of the Case**

Hollins seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a). A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). Hollins filed his 28 U.S.C. § 2254 petition after the effective date of the Antiterrorism and Effective Death Penalty Act ("the AEDPA"). His petition, therefore, is subject to AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997).

**II. Parties**

Hollins is confined at a state prison in Indiana. The respondent is Hollins' custodian, sued in his official capacity as a representative of the State of Indiana.

**III. Procedural Background**

Hollins was convicted in a state court of three counts of rape, one count of criminal deviate conduct, and one count of criminal confinement. He was also adjudged to be a habitual offender. One of the predicate convictions for the habitual offender enhancement was Hollins' conviction in No. 49G06-9901-CF-012547 for carrying a handgun without a license as a class C felony (hereafter "the handgun case"). Hollins was sentenced to an aggregate term of 110 years in prison. His conviction was affirmed in *Hollins v. State,* 2008 WL 2211106 (Ind.Ct.App. May 29, 2008) ("*Hollins I*"). The trial court's denial of Hollins' petition for post-conviction relief was affirmed on appeal in *Hollins v. State,* 2014 WL 3735939 (Ind.Ct.App. July 29, 2014)("*Hollins II*").

The filing of this action followed. Based on its examination of the habeas petition, as supplemented, the court summarily dismissed claims one and four because these claims "rest on asserted error of Indiana state [law] and thus do not state cognizable claims under § 2254(a)." The respondent was directed to answer the allegations of claims two, three and five. These claims are the following:

- Claim Two: Hollins' *Claim Two* is that his appellate counsel in *Hollins I* was ineffective for failing to challenge his consecutive sentences.

- Claim Three: Hollins' *Claim Three* is that his trial counsel was ineffective for: a) failing admit all of the available information at the severance hearing; b) failing to renew the severance motion at trial; c) failing to advise Hollins of plea offers made by the State; and d) failing to argue that the trial court improperly sentenced Hollins.

- Claim Five: Hollins' *Claim Five* is that his attorney in the handgun case was ineffective by causing Hollins to plead guilty.

The respondent filed a return to the order to show cause and Hollins has filed a reply to the return. The record has been appropriately expanded. Hollins argues the merits of claims which were summarily dismissed as not being cognizable in a proceeding pursuant to 28 U.S.C. § 2254(a), but no change in the disposition of those claims is warranted.

**IV. Statement of Facts**

"In § 2254 proceedings, federal courts are foreclosed from fact-finding. We therefore defer to the findings of the [state] court, which have not been challenged and are presumed to be correct unless rebutted by clear and convincing evidence." *Jones v. Butler,* 778 F.3d 575, 578 (7th Cir. 2015)(citing 28 U.S.C. § 2254(e)(1) and *Harris v. Thompson,* 698 F.3d 609, 613 (7th Cir. 2012)). A state court's factual finding is unreasonable only if it "ignores the clear and convincing weight of the evidence." *Taylor v. Grounds,* 721 F.3d 809, 817 (7th Cir. 2013) (internal quotation marks and citations omitted).

Hollins has not shown the factual findings of the Indiana state courts to be unreasonable. The Court therefore looks to the summary of the evidence made in the course of his direct appeal:

> On August 28, 2002, B.F. worked at P.T.'s, a club near Pendleton Pike in Indianapolis. After finishing work late that evening, she started to walk home. Near the intersection of 10th and Gray Streets, a car driven by a man B.F. recognized as a patron of P.T.'s pulled over. The man offered her a ride, and she accepted. Although she was not far from her destination, the man drove a route that took her farther away. B.F. asked him to pull over and let her out, but he refused and continued to drive. The man pulled the car behind an old building located at 2440 Lafayette Road and parked.
> 	B.F. testified that the man then moved her seat into the reclined position, held a box cutter to the side of her neck, "said if you cooperate, you'll live," and "made her take off" her pants, underwear, and shoes. (Tr. 59). B.F. testified that he "made [her] put her feet on the dashboard" and, while holding the box cutter against her neck, "raped [her]" by putting his penis in her vagina. (Tr. 60, 61). When he finished, he told her to get out of the car, then threw her clothes out, and backed the car around the building. B.F. reported the incident to the police. She was taken to the hospital, where a sexual assault examination was conducted and evidence collected.
> 	On the morning of April 8, 2003, J.R. was waiting at a bus stop across from the juvenile center located at 25th Street and Keystone Avenue. A car pulled up to the bus stop, and the driver asked her if she needed a ride. J.R. said no. The man pulled his car into the gas station near the bus stop and shouted something to her. J.R. walked to the car, and the man opened the passenger-side door. She saw him holding something with "a brown handle down by his leg" and "froze." (Tr. 112). The man "slid" over, grabbed her hand, and "told [her] don't scream, don't run, just get in." (Tr. 113). J.R. got in, and he drove the car a short distance and then pulled over. J.R. testified that he then "told [her] to close [her] eyes and he laid the seat

back and he put [a] knife up to [her] throat." (Tr. 114). J.R. further testified that he "told [her] not to say anything or he would stab [her] and cut [her]." (Tr. 115). The man then resumed driving, continuing to hold the knife to J.R.'s throat. The man stopped the car behind the building located at 2440 Lafayette Road.

J.R. testified that the man then "told [her]. . . to take off [her] pants," moving the knife against her throat and threatening to "stab and cut" her if she did not comply. (Tr. 116). J.R. "started to take off" her pants, but then he "leaned over and pulled [her] shoes off and pulled [her] pants" and underwear off. (Tr. 117). J.R. testified that the man then unzipped his pants and ordered her to "give [him] oral," again threatening to "stab and cut [her]" before he "put his penis in [her] mouth." (Tr. 118). J.R. further testified that the man "then . . . moved down in between [her] legs and put [her] legs up" on the dashboard and "put his penis up inside [her] vagina." (Tr. 119). After finishing, the man threw her clothes out of the car, told her to get out and walk around to the front of the car, and backed the car around the building. J.R. reported the incident to the police, and she underwent a sexual assault examination and evidence was collected at the hospital.

On the morning of February 6, 2004, Rudolfo Prieto agreed to drive D.S. to a house near 16th and Concord Streets for her to make a drug purchase. On the way, D.S. and Prieto argued. After arriving at the house, D.S. went to the door and began knocking; Prieto drove away. When no one answered, D.S. started to walk home. Near the intersection of 10th and Concord Streets, a car pulled over to the side of the street and offered D.S. a ride; she accepted and got in the car. D.S. asked the man some questions and concluded that he was not a police officer; she then told him that she was looking for some drugs and needed money. D.S. agreed to perform "some kind of sexual favor" for $20.00. (Tr. 260). He then drove to the back of the building located at 2440 Lafayette Road.

D.S. testified that he then "pulled out [a] box cutter" and held it to the side of her throat. (Tr. 245). D.S. further testified that the man told her to take off her pants, underwear, and shoes, while pressing "the knife a little deeper." (Tr. 246). D.S. complied; and he "reached over" and "pulled the lever" to recline the passenger seat, and then "crawled on top of [her]." (Tr. 247, 246). D.S. testified that he put his penis in her vagina, while continuing to hold the box cutter to her throat "the whole time." (Tr. 249). D.S. further testified that during the rape, the man accidentally hit a switch that lowered the rear passenger-side window. When he had finished raping her, he told her to get out and walk around to the front of the car; he then threw her clothes out and backed the car around the building.

D.S. put her clothes on and ran to a nearby business to call the police. Detective Hewitt, a sex crimes investigator with the Indianapolis Metropolitan Police Department, was dispatched and interviewed D.S. D.S. provided a good description of the rapist's car, and Hewitt drove her through the neighborhood near 2440 Lafayette Road. In the driveway of a home several blocks from the crime scene, they saw a car matching the description—with its passenger seat in the reclined position and its rear passenger-side window lowered. D.S. advised Hewitt that she was positive this was the car in which she had been raped. Hewitt then took D.S. to the hospital, where she underwent a sexual assault examination and evidence was collected.

*Hollins I,* at 2008 WL 2211106, at *1-2. The procedural development of the prosecution was reviewed in the decision affirming the denial of post-conviction relief:

> In September 2005, the State charged Hollins with rape as a class A felony as to B.F.; rape as a class A felony, criminal deviate conduct as a class A felony, and criminal confinement as a class B felony as to J.R.; and rape as a class A felony as to D.S. A sixth charge alleged the rape of a fourth woman, L.B. The State also filed an information alleging that Hollins was an habitual offender.
> In October 2006, Hollins filed a motion to sever the offenses and set a separate trial for each victim. The State responded that the facts established "signature crimes." Trial Tr. p. 531. The trial court granted the motion to sever the charge alleging the rape of L.B. because she delayed reporting the crime, and there was apparently a lack of DNA. However, the trial court denied severance of the other charges, agreeing with the State that the alleged offenses were "signature crimes." Trial Tr. p. 34.
> A jury trial was held on March 12 and 13, 2007. B.F., J.R., and D.S. each testified that Hollins raped her while holding a blade to her neck. Forensic analysis reports established that evidence collected from B.F., J.R., and D.S. after the sexual examinations contained DNA matching Hollins's DNA profile. Hollins testified that he had consensual sex with each of the women and did not hold a box cutter or knife to the woman's neck. The jury convicted Hollins as charged, and he admitted he was an habitual offender. The trial court imposed a 110–year aggregate sentence.

*Hollins II,* 2014 WL 3735939 at *3.

## V. Applicable Law

"[W]hen examining a habeas corpus petition, the first duty of a district court . . . is to examine the procedural status of the cause of action." *United States ex rel. Simmons v. Gramley,* 915 F.2d 1128, 1132 (7th Cir. 1990). "[T]he burden is on the petitioner to raise his federal claim in the state court at a time when state procedural law permits its consideration on the merits. . . ." *Bell v. Cone,* 543 U.S. 447, 451 n.3 (2005). "[F]ederal courts will not review a habeas petition unless the prisoner has fairly presented his claims 'throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings.'" *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015) (quoting *Richardson v. Lemke*, 745 F.3d 258,

268 (7th Cir. 2014), and citing 28 U.S.C. § 2254(b)(1)). A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

As to habeas claims which have been properly presented in the state courts for possible later inclusion in an action for habeas corpus relief, the requirements of the AEDPA "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown,* 127 S. Ct. 2218, 2224 (2007) (citations omitted). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). The three exceptions are: (1) the state court's decision was contrary to clearly established federal law; or (2) there was an unreasonable application of clearly established federal law; or (3) the decision was based on an unreasonable determination of the facts. *Id.* at 100 (citing 28 U.S.C. §§ 2254(d)(1), (2)); *see also O'Quinn v. Spiller*, 806 F.3d 974, 977 (7th Cir. 2015)("We ask only whether the [state court's] decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.'")(quoting 28 U.S.C. § 2254(d)(1), (2)).

The requirements of AEDPA reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington,* 562 U.S. at 102–03 (quoting *Jackson v. Virginia,* 443 U.S. 307, 332 n.5 (1979)).

The Court has already found that the decisions of the Indiana Court of Appeals were not based on an unreasonable determination of the facts. The Court also finds that those decisions were not contrary to clearly established federal law as determined by the Supreme Court of the United States. This leaves analysis of the "unreasonable application" prong of § 2254(d)(1). *See, e.g., Redmond v. Kingston,* 240 F.3d 590 (7th Cir. 2001)("[u]nder the current regime governing federal habeas corpus for state prison inmates, the inmate must show, so far as bears on this case, that the state court which convicted him unreasonably applied a federal doctrine declared by the United States Supreme Court")(citing 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362 (2000); *Morgan v. Krenke*, 232 F.3d 562 (7th Cir. 2000)).

"A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton,* 544 U.S. 131, 141 (2005) (internal citations omitted). A state court decision is only unreasonable when it "l[ies] well outside the boundaries of permissible differences of opinion," thereby allowing the writ to issue. *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002) (citation omitted).

"The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes,* 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002)). In short, the standard of § 2254(d) is "difficult to meet . . . because it was meant to be." *Burt v. Titlow,* 134 S. Ct. 10, 16 (2013) (internal quotation marks omitted).

## VI. Discussion

### Claim Two

Hollins' *Claim Two* is that his appellate counsel in *Hollins I* was ineffective for failing to challenge his consecutive sentences. This claim was not presented in *Hollins II* or in the petition to transfer filed after the denial of post-conviction relief had been affirmed. Hollins committed procedural default with respect to Claim Two. He has not shown the existences of circumstances permitting him to overcome the consequences of this procedural default. This unexcused procedural default bars consideration of the merits of Claim Two.

### Claim Three

Hollins' *Claim Three* is that his trial counsel was ineffective for: a) failing to admit all of the available information at the severance hearing; b) failing to renew the severance motion at trial; c) failing to advise Hollins of plea offers made by the State; and d) failing to argue that the trial court improperly sentenced Hollins.

It is true that "[i]neffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed." *Pole v. Randolph,* 570 F.3d 922, 934 (7th Cir. 2009) (citing *Peoples v. United States,* 403 F.3d 844, 848 (7th Cir. 2005)). This cannot be used, however, to circumvent the exhaustion requirement as to each specification of attorney ineffectiveness. *See Campbell v. Burris*, 515 F.3d 172, 185 (3d Cir. 2008) ("[I]neffective assistance of counsel claims based on different acts or omissions are discrete claims and must each be exhausted."). "[T]o preserve a claim of ineffective assistance of counsel, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific acts or omissions of his lawyers that resulted in prejudice." *Kelley v. Secretary for Dep't of Corrections*, 377 F.3d 1317, 1344 (11th Cir. 2004).

All but the first of Hollins' specifications of ineffective assistance of counsel are procedurally defaulted by not having been presented to the Indiana Supreme Court in Hollins' petition to transfer following *Hollins II*. *Hough v. Anderson,* 272 F.3d 878, 892-93 (7th Cir. 2001) (petitioner's failure to present issue to Indiana Supreme Court constituted procedural default). Hollins' unexcused procedural default bars consideration of the merits of specifications (b), (c), and (d) of Claim Three.

The ineffective assistance of counsel claim which has been properly preserved for federal habeas review is Hollins' contention that his trial counsel was ineffective for failing to admit all of the available information at the severance hearing.

*Strickland v. Washington,* 466 U.S. 668, 684 (1984), provides the clearly established Federal law, as determined by the Supreme Court of the United States that governs a claim of ineffective assistance of counsel.

> *Strickland* recognized that the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence" entails that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence. *Id.,* at 685–687. "Under *Strickland,* we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010) (quoting *Strickland, supra,* at 688, 694).

*Hinton v. Alabama,* 134 S. Ct. 1081, 1087-88 (2014)(parallel citations omitted). The Supreme Court framed the determinative question as "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. This Court must give "double deference" to the state court's ruling on ineffective assistance of counsel claims because habeas review under AEDPA requires

a habeas court to give the state court and the defense attorney the benefit of the doubt. *Woods v. Donald,* 135 S. Ct. 1372, 1376 (2015).

The Indiana Court of Appeals recognized the above *Strickland* standard. *Hollins II,* 2014 WL 3735939, at *5 ("To prevail on a claim of ineffective assistance of counsel, the petitioner must establish the two components first set out in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)").

It may be noted that Hollins argued in his direct appeal that the trial court erred in denying his motion to sever. The Indiana Court of Appeals cited the pertinent state statutes, IND. CODE § 35–34–1–9(a) and IND. CODE § 35-34-1-11(a), and explained that under Indiana law "[o]ffenses may be sufficiently 'connected together' to justify joinder under subsection 9(a)(2) if the State can establish that a common modus operandi linked the crimes and that the same motive induced that criminal behavior." *Hollins I,* at 2008 WL 2211106, at *4 (internal quotation omitted and citing cases). Applying this rule, the Court of Appeals explained:

> We have defined modus operandi as "a pattern of criminal behavior so distinctive that separate crimes may be recognized as the work of the same wrongdoer." *Harvey v. State,* 719 N.E.2d 406, 409 (Ind. 1999) (quoting *Goodman v. State,* 708 N.E.2d 901, 902 (Ind.Ct.App. 1999)). Here, the assaults on B.F., J.R., and D.S. had the same modus operandi. Each woman was on foot and alone when approached by Hollins in his car. Each was offered a ride and once inside his car, taken to the same location. Once there, in each instance Hollins reclined the passenger side seat, placed a bladed weapon against the throat of each woman, ordered each woman to remove her clothing below waist-level, and proceeded (without the use of a condom) to insert his penis in her vagina. After completing each act of rape, Hollins would order the woman out of the car and then proceeded to throw her clothes out and back his car away. We find that this pattern of conduct is "sufficient to establish that the molestation of each victim was the handiwork of the same person." *Craig [v. State,* 730 N.E.2d 1262, 1265 (Ind. 2000)]. Further, the motive of the sexual offenses was the same-to satisfy Hollins's sexual desires. *Id.* Therefore, Hollins did not have a right as a matter of law "to a severance of the offenses." I.C. § 35–34–1–11(a).

*Id.* The Court of Appeals then noted that Hollins had not shown and had not suffered prejudice from the trial court's failure to grant his request for severance of the charges. *Id.,* at *5 ("If he had been tried separately, the same DNA evidence would have linked Hollins to each woman, and each woman would have testified to the same facts. Because the dispositive determination would still be credibility, based upon Hollins' defense of consent, we cannot find that Hollins was prejudiced by the denial of his motion to sever.").

After reviewing these features of its decision in *Hollins I, Hollins II,* 2014 WL 3735939 at *3-4, the Indiana Court of Appeals considered Hollins' claim of ineffective assistance of counsel:

> Hollins first contends that trial counsel was ineffective because he failed to "insure [at the severance hearing] that the trial court based its decision on all relevant and available information." Appellant's Br. p. 4. Hollins appears to argue that trial counsel should have informed the trial court that the victims were prostitutes. He appears to believe that the trial court would have granted his motion to sever had the court known the victims shared this similar background. According to Hollins, he "had the right to severance if the offenses were joined for trial . . . solely on the ground that they were of a same or similar character." Appellant's Br. p. 6.
>
> However, the State correctly points out that Hollins's argument "ignores that the State may overcome a defendant's entitlement to severance by showing that the charges contain a common modus operandi indicating that the charges were the work of the same person." Appellee's Br. p. 13. On direct appeal, this Court concluded that Hollins did not have the right to severance of the offenses because a common modus operandi linked the offenses, and the same motive induced the criminal behavior. Hollins does not challenge this conclusion or argue that he was prejudiced by it. We find no ineffective assistance of trial counsel.

*Hollins II,* 2014 WL 3735939, at *5-6.

The foregoing is a correct, as well as a reasonable, application of each prong of *Strickland.* As to performance, "[i]t is not deficient performance to fail to raise an argument with no real chance of success." *Hough v. Anderson,* 272 F.3d 878, 898 n.8 (7th Cir. 2001); *see also Benefiel v. Davis,* 357 F.3d 655, 664 (7th Cir. 2004)("[C]ounsel cannot be faulted for failing to register a futile objection."). As to the prejudice prong, the analysis was reasonable, for the trial court's

knowledge of the victims' supposed similar character would not have undermined the common modus operandi and thus there is no reasonable probability that such knowledge would have caused the trial court to grant Hollins' request for a severance. *See Preno v. Moore*, 131 S. Ct. 733, 745 (2011)("The state postconviction court reasonably could have concluded that [the defendant] was not prejudiced by counsel's actions. Under AEDPA, that finding ends federal review.").

**Claim Five**

The handgun case conviction was final on August 22, 1999 because this was the last day on which he could have filed a notice of appeal in that case. No appeal was filed in that case. An action for post-conviction relief was filed in that case on July 14, 2009—*ten years* after Hollins had been sentenced. Hollins asserted in that action that he had been denied the effective assistance of counsel. The trial court's denial of relief was affirmed on appeal in *Hollins v. State,* No. 49A04-1109-PC-533 (Ind.Ct.App. June 29, 2012).[1]

---

[1] The gun case was docketed in the Indiana state court to which the undersigned previously served as presiding judge. The undersigned is aware of the issue of recusal which may arise in such circumstances, *see Weddington v. Zatecky,* 721 F.3d 456, 463 (7th Cir. 2013), but that step is not warranted here. This conclusion is reached because the undersigned had no involvement in the guilty plea, the sentencing, or the action for post-conviction relief filed in the gun case. A portion of the expanded record shows that the guilty plea and sentencing were conducted by the master commissioner explains this:

```
001 GUILTY PLEA HEARING MINUTES 7/23/1999
002 Master Commissioner
003 Defendant in person and by counsel FREEMAN.
004 State of Indiana by CONLEY.
005 Plea Agreement filed (H.I.).
006 Defendant files request for leave to withdraw former plea of
NOT GUILTY and leave to plead GUILTY (H.I.).
007 Offense COUNT 001 CE
 008 Offense COUNT 003 HANDGUN WITHOUT LIC./FC.
 009 DEFENDANT ADVISED OF RIGHTS/POTENTIAL PENALTIES. FACTUAL BASIS GIVEN.
 DEFT. AGREES AND COURT FINDS FACTUAL EXISTS.
 010 Court finds Defendant understands rights
 and knowingly and voluntarily waives rights.
 011 Plea accepted.
 012 Court enters Judgment of Conviction.
 013 ADDITIONAL ACTIONS:
 014 COURT NOW SENTENCE DEFENDANT.
```

The respondent argues that Hollins' challenge to the handgun case is improperly joined here, but as a matter of procedure under the *Habeas Rules* the Court will permit it.

The other obstacles to Hollins' challenge to the conviction entered in the handgun case, however, are insuperable here. These are that: (1) the conviction is beyond challenge here because Hollins did not prevail on it previously, *see Standbridge v. Scott*, 791 F.3d 715, 721-22 (7th Cir. 2015)(the Supreme Court has "held that 'once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (*or because the defendant did so unsuccessfully*), the conviction may be regarded as conclusively valid'")(quoting *Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 403 (2001))(emphasis added); and (2) Hollins' challenge to it is barred by AEDPA's one-year statute of limitation. *See Wood v. Milyard*, 132 S. Ct. 1826, 1831 (2012)("a state prisoner has one year to

---

015 Probation department files Presentence Investigation report (H.I.). Parties served.
016 Judgment of conviction entered on count(s) 1,3.
017 Court conducts Sentencing hearing and, after considering the Presentence Investigation report and all evidence presented, sentences the Defendant as follows: 018 As to Count 003, Sentence imposed 4 Y; Executed 730 D; Suspended 2 Y.
 019 Defendant placed on probation for 730 D; Order of probation Conditions signed and filed (H.I.). Defendant and Probation Department served.
020 Defendant assessed court costs of $125.00 and total fines of $0.00.3333399
021 Defendant ordered committed to Community Corrections and given 96 days credit time.
022 Abstract of Judgment issued and filed (H.I.).
023 Criminal Court Commitment Order
024 End of Update Sentencing/Commitment

Filing No. 15-13 at 3-4. The appeal from the denial of post-conviction relief in the gun case is likewise clear that the decision was not made by the undersigned.

file a federal petition for habeas corpus relief, starting from 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'")(quoting 28 U.S.C. § 2244(d)(1)(A)); *Gladney v. Pollard*, 799 F.3d 889, 893 (7th Cir. 2015)(noting the petitioner's habeas petition was untimely when his first state post-conviction petition was filed after the one-year limitations period had expired).

Based on the foregoing, Hollins is not entitled to the review on the merits of Claim Five.

**VII. Conclusion**

Hollins' conviction withstood challenge in the Indiana courts, and thus a presumption of constitutional regularity attaches to it. *See Farmer v. Litscher,* 303 F.3d 840, 845 (7th Cir. 2002) (citing *Parke v. Raley,* 506 U.S. 20, 29-30 (1992)); *Milone v. Camp,* 22 F.3d 693, 698-99 (7th Cir. 1994).[2] "Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed." *Hardy v. Cross*, 132 S. Ct. 490, 495 (2011).

This court has carefully reviewed the state record in light of Hollins' claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. The claim which was properly preserved in the Indiana state courts does not warrant relief in light of the deferential standard required by the AEDPA. *Harrington v. Richter*, 131 S. Ct. 770, 562 U.S. 86, 101 (2011)("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.")(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *Stern v. Meisner*, 2016 WL 523969, at *3 (7th Cir. Feb. 9, 2016)("In other words, [the habeas petitioner] must show a

---

[2] Obviously, this is not a presumption related to the AEDPA, but is "the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." *Parke v. Raley,* 506 U.S. at 29 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 468 (1938)).

complete absence of reasonableness in the [state] appellate court's decision.")(citing *Harrington*, 562 U.S. at 98).

Hollins' petition for a writ of habeas is therefore **denied.** Judgment consistent with this Entry shall now issue.

### Certificate of Appealability

Pursuant to Rule 11(a) of the *Rules Governing Section 2254 Cases*, the Court finds that Hollins has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **declines** to issue a certificate of appealability.

IT IS SO ORDERED.

Date: March 1, 2016

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

JOHN HOLLINS
171112
WABASH VALLEY CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Electronically Registered Counsel